24-537-cv
*Neville, Rodie and Shaw, Inc. v. Legard*


# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of March, two thousand twenty-five.

PRESENT:
> REENA RAGGI
> GERARD E. LYNCH,
> BETH ROBINSON,
> > *Circuit Judges*,

―――――――――――――――――――――――――――

NEVILLE, RODIE AND SHAW, INC.,

> Plaintiff-Appellee,

> v.                                                        24-537-cv

E.A. PRESCOTT LEGARD, As Executor of the
Estate of Edwin F. Legard, Jr.,

> Defendant-Appellant.

―――――――――――――――――――――――――――

FOR APPELLANT:                    CHARLES E. DORKEY III, Dentons US LLP,
                                  New York, NY.

FOR APPELLEE:                                    FRED D. WEINSTEIN, Kurzman Eisenberg
                                                 Corbin & Lever, LLP, White Plains, NY.

Appeal from a judgment of the United States District Court for the District of Connecticut (Bolden, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on February 23, 2024, is **AFFIRMED**.

Plaintiff-Appellee Neville, Rodie and Shaw, Inc. ("NRS") asked a federal district court to order Defendant-Appellant E.A. Prescott Legard—the executor of the estate of Edwin F. Legard, Jr. (the "Estate")—to sell the Estate's shares (the "Shares") of NRS common stock to NRS pursuant to a mandatory buyout provision in a shareholders' agreement (the "Agreement"). Granting NRS's motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the district court entered an order for specific performance, directing the Estate to sell the Shares to NRS at book value. The Estate appealed. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision.

## I.    BACKGROUND

NRS's Complaint includes the following allegations, which the Estate admits, except where noted below.

In 2003, the owners of all common shares of NRS entered into a shareholders' agreement (the "Agreement") to govern, among other things, restrictions on the ownership and transferability of NRS stock.  In Section 2 of the Agreement, titled "Restrictions on Ownership and Transferability of Common Stock," App'x at 29, the Agreement addresses three scenarios—the death of a shareholder (Subsection 2.A), the termination of a shareholder's employment with the company (Subsection 2.B), and a shareholder's pledge or assignment of shares (Subsection 2.C).  With respect to all three categories the Agreement allows a shareholder to own or assign common shares *only* if NRS or other shareholders fail to buy the shares:

> No Shareholder (or legal representative) in restricted categories A, B or C below shall be permitted to continue to own or to assign, sell or pledge his shares of Common Stock unless with respect thereto the Corporation or other Shareholders fail to purchase such shares of Common Stock pursuant to this Agreement.

*Id.* at 30.

Subsection 2.A, immediately below the above paragraph, addresses the

disposition of a shareholder's common stock upon the shareholder's death:

> Upon the death of any Shareholder, the Corporation shall have the obligation to purchase all of the decedent's shares as soon thereafter as is practicable. The purchase price shall be the Book Value of the shares as of the end of the fiscal year completed prior to the date of the shareholder's death . . . .
>
> If the Corporation is unable to purchase the decedent's shares because the Corporation does not have sufficient surplus, the surviving Shareholders shall have the right to purchase all of the decedent's stock within 60 days of the death of the shareholder, on a pro rata basis or on any other basis on which they agree, at Book Value. If the surviving Shareholders do not exercise their right to purchase the decedent's shares, the Corporation shall have the obligation to accumulate surplus or reduce capital so that it can legally purchase the decedent's shares from his estate in accordance with this paragraph . . . .
>
> If a deceased shareholder's shares are not purchased by the Corporation (or the other Shareholders) within one year from the date of death, the legal representatives and/or beneficiaries or heirs shall have the right to sell such shares, but the Corporation's obligation to purchase such shares shall continue in effect until such shares are sold . . . .

*Id.* at 30–31.  Elsewhere in Section 2, "Book Value" is defined as "the book value determined in accordance with generally accepted accounting principles" by NRS's accountants.  *Id.* at 29.

Edwin F. Legard, Jr. owned twenty common Shares of NRS when he died in September 2022.  After he died, NRS demanded that the Estate tender Legard's Shares in exchange for a payment of Book Value.  The Estate has refused to sell the Shares and maintains that—although § 2.A of the Agreement requires NRS to *buy* the Shares from the Estate—the Agreement does not reciprocally require the Estate to *sell* the Shares to NRS.

NRS thus filed this lawsuit seeking specific performance in the form of an order compelling the Estate to sell the Shares to NRS at Book Value.  On cross-motions for judgment on the pleadings, the district court rejected the Estate's view that the Agreement imposes no obligation on the Estate to sell the Shares to NRS.  *See Neville, Rodie & Shaw, Inc. v. LeGard*, No. 3:23-cv-266, 2024 WL 656517, at *5–7 (E.D.N.Y. Feb. 16, 2024).  It reasoned that "such an interpretation of the Agreement relies on an artificially narrow reading of certain provisions of the Agreement and would require the Court to ignore the broader context and

purpose of the Agreement as a whole." *Id.* at *6.[1] It then ordered the Estate to sell its Shares to NRS at Book Value. *Id.* at *8. This appeal followed.

## II.    DISCUSSION

We review a district court's decision granting judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) without deference to the district court's reasoning. *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021).

"Judgment on the pleadings is appropriate if, from the pleadings, the moving party is entitled to judgment as a matter of law." *Burns Int'l Security Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am.*, 47 F.3d 14, 16 (2d Cir. 1995) (citing Fed. R. Civ. P. 12(c)). "[W]e must accept the non-movant's pleading as true and decline to weigh competing allegations asserted by the moving party." *Lively*, 6 F.4th at 301. In this case, we also consider the contents of the Agreement, because on a 12(c) motion, "courts may consider . . . documents incorporated by reference in or integral to the pleading[s]." *Id.* at 306.

---

[1] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

Under New York law, our goal in interpreting the Agreement "is to give effect to the intent of the parties as revealed by the language of their agreement."[2] *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co., N.A.*, 773 F.3d 110, 113–14 (2d Cir. 2014). "The words and phrases in a contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *Id.* at 114.

We agree with the district court that the plain meaning of Section 2, considered in the context of the whole Agreement, compels the Estate to tender its Shares to NRS for Book Value. As noted above, Section 2 is titled *"Restrictions on Ownership and Transferability of Common Stock."* App'x at 29 (emphasis added). This undercuts the Estate's argument that the purpose of Section 2 is "to provide flexibility for the estates of decedents who may require financial liquidity." Appellant's Br. at 12.

The plain language of Section 2 states that a shareholder in any of the three "restricted categories . . . shall [not] be permitted to continue to own or . . . sell or pledge his shares of Common stock" unless NRS *and* its other shareholders both "fail to purchase" the shares pursuant to the Agreement. App'x at 30. This

_____

[2] The parties do not dispute that the Agreement is governed by New York law.

7

language expressly forbids a decedent's estate from owning shares; the only exception contemplates a "fail[ure]" on NRS's part to purchase, not an election by the restricted shareholder not to sell. *Id.*

Moreover, Subsection 2.A specifically contemplates a deceased shareholder's representative selling shares to someone other than NRS or other NRS shareholders *only* after a year, and then *only* if NRS or the surviving shareholders fail to buy the shares. In addition, Subsection 2.B contemplates that NRS has the same "obligation to purchase" from shareholders whose employment with NRS has been discharged, *id.* at 31, and Subsection 2.C gives *a right of first refusal* to NRS to purchase NRS shares before they are sold outside the existing group of shareholders.

Together, these provisions reflect a corporation's efforts to restrict the alienability of shares and to promote stability in corporate governance. *See, e.g., Matter of Penepent Corp.*, 96 N.Y.2d 186, 192 (2001) (explaining that mandatory buy-out provisions in shareholder agreements "avoid costly, lengthy litigation" and "promote reliance, predictability, and definitiveness in relationships among shareholders in close corporations").

8

Section 2's plain language thus forecloses the Estate's suggestion that it can elect to sell to third parties by simply refusing to sell to NRS or the surviving shareholders and then running out the clock.

In sum, we conclude that the Agreement unambiguously requires the Estate to tender its Shares, and that the Estate's alternate construction fails to "give full meaning and effect" to all provisions of the Agreement. *Chesapeake Energy Corp.*, 773 F.3d at 114.

For the above reasons, the District Court's judgment is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court